NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| L.K. and K.L. o/b/o R.L.,<br><br>        Plaintiffs<br>  v.<br><br>RANDOLPH TOWNSHIP BOARD OF EDUCATION,<br><br>        Defendant. | Civil Action No.: 19-14836<br><br>**OPINION** |

**CECCHI, District Judge.**

I. **INTRODUCTION**

This matter comes before the Court on Plaintiffs L.K. and K.L.'s (the "Parents") o/b/o R.L. (together "Plaintiffs") motion for summary judgment (ECF No. 11) pursuant to Federal Rule of Civil Procedure 56, which seeks damages from Defendant Randolph Township Board of Education ("Defendant" or the "Board"), pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("IDEA"). Plaintiffs seek tuition and transportation costs, and other related expenses, concerning R.L.'s private placement at the Craig School following the Parents' removal of R.L. from the Board's public school. ECF No. 11 at 2. In the alternative, Plaintiffs request that this matter be remanded to the Administrative Law Judge ("ALJ") for analysis under the applicable statutory and regulatory scheme. ECF No. 13 at 3. Defendant opposed Plaintiffs' motion (ECF No. 12), and Plaintiffs replied (ECF No. 13). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, the Court denies Plaintiffs' motion for summary judgment, but grants their request to remand this matter to the ALJ for further consideration in accordance with this Opinion.

## II. BACKGROUND

### a. Factual Background

R.L. is a former student within the Randolph public school district. ECF No. 1 at ¶ 5 (hereinafter "Compl."). R.L. was born on April 28, 2006, and resides within the area served by Defendant. *Id.* In 2017, the Parents transferred R.L. to the Craig School, an independent school in Mountain Lakes, New Jersey, where he is still enrolled. *Id.*

In 2014, Defendant's Child Study Team found R.L. eligible for special education services under the category of Other Health Impaired, based on a diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD"). *Id.* at ¶ 8. Subsequently, the Board offered R.L., through the Parents, an Individualized Education Program ("IEP"), which the Parents accepted. *Id.* at ¶¶ 8–10. Over the following three years until 2017, the Parents consulted with private doctors who independently evaluated R.L.'s medical conditions and the efficacy of R.L.'s IEP. *Id.* at ¶¶ 10–25. During those same three years, the Parents conducted numerous meetings with Defendant to discuss how to modify R.L.'s IEP to promote a more effective learning environment, *i.e.*, a Free Appropriate Public Education ("FAPE"), pursuant to Defendant's obligations under the IDEA. *Id.* Despite Defendant's efforts, the Parents continued to believe that Defendant was not providing "significant remediation" for R.L.'s learning needs. *Id.* The Parents also allege that at "every IEP meeting" they asked for different types of programs, but that they were ultimately rebuffed and told that R.L. "was 'getting what he needed.'" *Id.*

On January 17, 2017, the Board conducted a meeting with the Parents (the "IEP Meeting") and offered R.L. an IEP for the remainder of the 2016-2017 academic school year (the "2017 IEP"), proposing for him to be educated with special education services within Defendant's school district. *Id.*, Exhibit A at 2 (hereinafter the "ALJ Opinion"). Ultimately, at the IEP Meeting, the

2

Parents signed and accepted the 2017 IEP. *Id.* at ¶ 11. However, the Parents assert that they were never given a copy of the final 2017 IEP at the IEP Meeting and were told to only sign "the signature page." ECF No. 11 at 12. Consequently, the Parents argue that they never consented to the implementation of the 2017 IEP as required under N.J.A.C. 6A:14-3.7.

Months later, the Parents explored enrolling R.L. at the Craig School for the 2017-2018 school year because of their discontent with the 2017 IEP. *Id.* at ¶ 21. According to the Parents, the 2017 IEP did not offer R.L. a FAPE as it allegedly: (1) placed R.L. in classes that were not "meeting his needs," (2) denied R.L. access to a "resource room" in which he previously made progress and instead placed him in large classes, (3) placed R.L. in "study skills" with no defined goals or objectives, (4) denied R.L. any direct instruction in executive functioning, and (5) contained certain goals and objectives which lacked measurable criteria to evaluate R.L.'s progress. *Id.* at ¶ 34.

While the Parents allege that they raised the idea of removing R.L. from the public school with Defendant at "every" IEP meeting since 2013, *id.* at ¶ 21, they did not actually notify Defendant of their decision to do so until the summer of 2017—six months after the IEP Meeting. *Id.* at ¶ 22. In particular, on July 31, 2017, the Parents completed a "transfer card" to advise Defendant that they had enrolled R.L. at the Craig School for the following school year. ALJ Opinion at 3. However, the Parents did not specify the reason for the transfer on this card "other than to indicate that it was for special services." *Id.* Thus, according to Defendant, the Parents failed to provide sufficient notice that they were rejecting the 2017 IEP and intended to enroll R.L. in a private school at public expense, as required by the IDEA and corresponding New Jersey law. ECF No. 12 at 29; 20 U.S.C. §§ 1412(a)(10)(C)(iii)(I)(aa), (bb); N.J.A.C. § 6A:14-2.10(c)(1), (2).

3

The Parents allege that they did not "understand" the type of notice that the law required them to provide to Defendant at that time. Compl. at ¶ 22.

### b. Procedural Background

On January 22, 2018, roughly six months after the Parents removed R.L. from the public school, Plaintiffs brought the underlying petition (the "Petition") requesting a Due Process hearing before the ALJ pursuant to 20 U.S.C. § 1415(b)(2). ECF No. 12 at 4; ALJ Opinion at 3. The Parents sought a determination that the Craig School constituted an appropriate placement for R.L. and an order directing Defendant to be responsible for "all costs at the Craig School commencing in September 2017 and continuing for as long as it shall remain an appropriate placement." *Id*. The ALJ held oral argument on January 25, 2019, and issued a final decision on June 20, 2019, dismissing the Petition due to the unreasonableness of the actions taken by the Parents based on their insufficient notice to Defendant. *Id.* On July 9, 2019, Plaintiffs filed the instant action appealing the ALJ's decision pursuant to 20 U.S.C. § 1415.

## III. LEGAL STANDARD

### a. IDEA

The IDEA requires states receiving federal education funding to ensure that students with disabilities receive a FAPE through the implementation of IEPs. *M.C.I. v. N. Hunterdon-Voorhees Reg'l High Sch. Bd. of Educ.*, No. 17-1887, 2018 WL 902265, at *1 (D.N.J. Feb. 15, 2018) (citing 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1)); *see also C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 65 (3d Cir. 2010) (a student's IEP must address their "level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress") (citing 20 U.S.C. § 1414(d)(1)(A)).

If parents believe that their public school district is not providing a FAPE to their disabled child, the IDEA enables the parents to "unilaterally remove" their child from the public school, enroll the child in a private school, and seek tuition from the public school district "for the cost of the alternative placement." *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 425–26 (3d Cir. 2013). Such reimbursement costs, however, are only available under the IDEA where the public school's proposed IEP was "inappropriate" and the student's placement at the private school was "appropriate." *M.C.I.*, 2018 WL 902265, at *5. Notwithstanding the appropriateness of the student's transfer from public school to private school, reimbursement costs may be reduced or denied on the bases of two "equitable limitations": (1) if the parents did not give adequate notice to the public school district of their rejection of the proposed IEP and their intent to enroll their child in a private school at public expense at the most recent IEP meeting or least ten days prior to the "removal"[1] of their child from the public school; or (2) where the parents act "unreasonably" in preventing the school district from implementing an effective IEP.[2] *See K. E. v. N. Highlands Reg'l Bd. of Educ.,* 840 F. App'x 705, 710 (3d Cir. 2020). Notably, and subsequent to the ALJ's decision, the Third Circuit reiterated that the IDEA's equitable limitations are not statutory bars on reimbursement, but rather factors that must be considered on a discretionary basis. *See id.* (citing § 1412(a)(10)(C)(iii)).

In New Jersey, parents who intend to recoup such reimbursement costs under the IDEA must file a Due Process action with an ALJ. N.J.A.C. 6A: 14–2.7. The ALJ's final decision may

---

[1] A student is considered "removed" from the public school, and thus "enrolled" in the private school, under the IDEA when his or her parents "sign[] the . . . enrollment contract" with the private school. *M.C.I.*, 2018 WL 902265, at *5 (citing W.*D. v. Watchung Hills Reg'l High Sch. Bd. of Educ.*, 602 F. App'x 563, 567, n.3 (3d Cir. 2015)).
[2] Courts are to analyze the reasonableness of a parent's conduct "in the course of IEP discussions, *i.e.*, 'in relation to the fashioning of a FAPE.'" *Id.*

5

be appealed by any aggrieved party through a civil action in state or federal court. 20 U.S.C. § 1415(i)(2). In a federal case appealing an ALJ's decision under the IDEA, the district court applies a "modified version of *de novo* review," *Munir*, 723 F.3d at 430 (citations omitted), such that it "must make its own findings by a preponderance of the evidence . . . [and] must also afford 'due weight' to the ALJ's determination." *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198–99 (3d Cir. 2004) (citations omitted). "The 'due weight' standard requires the court to consider the factual findings from the administrative proceedings prima facie correct and, if the court fails to adopt those findings, it must explain its reasons for departing from them." *Mary T. v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 241 (3d Cir. 2009) (quoting *Shore Reg'l High Sch.*, 381 F.3d at 199). Nonetheless, the Court's review over questions of law and the ALJ's application of legal precepts is plenary. *See Carlisle Area Sch. v. Scott P. By & Through Bess P.*, 62 F.3d 520, 528 n.3 (3d Cir. 1995). Further, as part of this modified *de novo* review, the district court shall receive and consider the records of the administrative proceeding and hear any additional evidence only at the request of a party by virtue of a formal application.[3] *A.S. v. Colonial Sch. Dist.*, No. 19-2741, 2020 WL 6784350, at *6 (E.D. Pa. Nov. 18, 2020) (citing 20 U.S.C. § 1415(i)(2)(c)).

## IV.   **DISCUSSION**

The ALJ dismissed the Petition finding that the Parents acted unreasonably by neither informing Defendant at the IEP Meeting nor 10 business days prior to R.L.'s removal from the public school of their intent to place R.L. at the Craig School at public expense due to their

---

[3] Defendant alleges that Plaintiffs have submitted additional evidence attached to their pending motion that was not included in the administrative record. ECF No. 12 at 5 (noting that Plaintiffs have submitted "altered affidavits" of Lorraine Kent and Dr. Jane Brown "and documentation (Exhibits C, E, F, and G)"). Defendant argues that the Court may not consider such evidence as Plaintiffs have not submitted a formal application to the Court. *Id.* The Court need not address this issue at this time as, for the reasons described below, it remands this matter to the ALJ for further consideration.

6

rejection of Defendant's proposed 2017 IEP. ALJ Opinion at 8 ("Respondent is entitled to summary decision because Petitioners acted unreasonably and made a unilateral placement without giving proper notice."). As a result of the ALJ's findings as to Plaintiffs' insufficient notice, she did not determine whether Defendant provided R.L. with a FAPE, or whether R.L.'s enrollment at the Craig School was appropriate pursuant to 20 U.S.C. § 1412(a)(10)(C)(iii) and N.J.A.C. 6A: 14–2.10(c)(1)–(4). ALJ Opinion at 8.

Plaintiffs challenge the ALJ's decision on three grounds. First, Plaintiffs argue that they provided the Defendant with sufficient notice of their intent to remove R.L. from the public school and place R.L. in a private school. Second, Plaintiffs aver that, even if they did not provide Defendant with sufficient notice, the ALJ failed to consider the second equitable limitation— whether the Parents acted reasonably during the IEP discussions. Third, Plaintiffs contend that the ALJ failed to treat the IDEA's equitable limitations as "discretionary bases" for reducing or denying reimbursement rather than as statutory bars on any reimbursement.

    a. **Notice**

As noted above, the IDEA provides that parents should notify their public school board of their intention to "remove" their child from public school and enroll him in a private school at public expense before the parents actually "remove" their child from public school, if the parents intend to recoup reimbursement costs related to the private placement. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 240 (2009); *M.C.I.*, 2018 WL 902265, at *5 (citing 20 U.S.C. § 1412(a)(10)(C) and N.J.A.C. 6A: 14–2.10(b)). The IDEA offers parents two ways to deliver such notice: (1) at the most recent IEP meeting that the parents attended prior to their removal of their child from public school, or (2) 10 business days prior to the removal of their child from public school, the parents must "inform the IEP Team that they were rejecting the placement proposed" by the public

school, including "stating their concerns" and their intent to enroll their child in a private school at public expense. *See K. E.*, 840 F. App'x at 710–11 (citing 20 U.S.C. §§ 1412(a)(10)(C)); *see also* N.J.A.C. § 6A:14-2.10(c)(1), (2).

Here, the Parents' own allegations demonstrate that they did not adhere to the IDEA's formal notice requirements in connection with their removal of R.L. from the public school. *See, e.g.*, Compl. at ¶ 22. First, the Parents actually "removed" R.L. from the public school on or before July 31, 2017—the date on which the Parents sent a "transfer card" to Defendant indicating that they had "enrolled" R.L. at the Craig School. Second, the Parents never previously notified Defendant—including within the transfer card—of their intent to recoup public reimbursement or of their rejection of the proposed IEP. Compl. at ¶ 22; ECF No. 13 at 3. Therefore, the Court agrees with the ALJ that Plaintiffs failed to effectuate notice in accordance with the requirements of the IDEA and corresponding New Jersey Law.[4] *M.C.I.*, 2018 WL 902265, at *5 (citing 20 U.S.C. § 1412(a)(10)(C)(iii) and N.J.A.C. 6A:14–2.10).

While Plaintiffs allege that they orally expressed their discontent regarding R.L.'s 2017 IEP at the IEP Meeting (Compl. at ¶ 11), that alone is insufficient for notice under the IDEA. *See M.C.I.*, 2018 WL 902265, at *5, 6 ("[T]hat Plaintiff may have expressed concerns [is] legally insufficient . . . [as] Plaintiff did not outright reject [the IEP] . . . [and] seek private school tuition [at public expense] . . . despite being present in the Public School with appropriate personnel and thus having an opportunity to reject the program."). Further, although the Parents assert that they mistakenly believed that giving the transfer card information to Defendant constituted adequate

---

[4] However, under New Jersey regulations corresponding to the IDEA, untimely notice may be excused pursuant to four enumerated exceptions. *See* N.J.A.C. 6A: 14–2.10(d). Although the Court does opine on this issue, on remand the ALJ should address the potential applicability of these notice exceptions to the extent that they apply.

notice (ECF No. 13 at 3), the Court's inquiry regarding the IDEA's equitable limitations "focuses not on the parents' subjective intent, but on their actual conduct and its consequences." *K. E.*, 840 F. App'x at 710–13 ("[A]ny failure on the parents' part to provide the notice specified in the IDEA is an equitable limitation."). Accordingly, Plaintiffs' arguments as to the notice requirement are unavailing.

b.  **Reasonableness of the Parents' Conduct**

As referenced above, the ALJ concluded that the Parents' behavior was unreasonable and barred any reimbursement because they failed to provide adequate notice to Defendant. In doing so, Plaintiffs argue that the ALJ failed to recognize that the IDEA carves out two equitable limitations—adequacy of notice and the reasonableness of a parent's conduct—as separate grounds for reduction or denial of reimbursement, meaning that ALJ was still required to assess the Parents' "conduct in the course of IEP discussions, *i.e.*, in relation to the fashioning of a FAPE," *see K. E.*, 840 F. App'x at 710–13 (citations omitted), even after finding that they failed to provide adequate notice.

For instance, in assessing the reasonableness of the Parents' conduct, the ALJ may also have considered that the Parents: (1) attended numerous IEP meetings with Defendant over the course of several years prior to R.L.'s removal from the public school; (2) cooperated with Defendant to formulate IEPs; (3) orally expressed their discontent with the proposed IEPs at meetings with Defendant; (4) and provided private physician reports to Defendant regarding R.L.'s learning disabilities in order to optimize his IEPs. *See M.C.I.*, 2018 WL 902265, at *7 (listing out factual considerations for analysis of whether a parent's conduct was "reasonable" during IEP discussions). Further, the administrative record neither suggests that the Parents "feigned interest

in . . . [R.L.'s] IEPs" nor were "obstructionist or uncooperative" in fashioning a FAPE for R.L.—relevant factors as to the reasonableness of their conduct. *Id.*

Thus, when considering these facts, it is not clear that the Parents' conduct was unreasonable. *M.C.I.*, 2018 WL 902265, at *7, 8 (ALJ must reach his or her conclusion about the reasonableness of a parent's conduct with "equitable analysis"). As such, on remand, an assessment of whether the Parents' conduct unreasonably prejudiced Defendant's ability to implement an effective IEP for R.L. is required. *Id.*

c. **Discretionary Analysis for Reducing or Denying Reimbursement**

When a public school district fails to provide a FAPE for a student and the subsequent placement of the student in a private school is deemed appropriate, the ALJ or the district judge still retains "discretion" to reduce the amount of a reimbursement award if at least one of the IDEA's equitable limitations "so warrant." *H.L. o/b/o V.L. v. Marlboro Twp. Bd. of Educ.*, No. 169324, 2017 WL 5463347, at *8 (D.N.J. Nov. 14, 2017) (citing *T.A.*, 557 U.S. at 247; 20 U.S.C.A. § 1412(a)(10)(C)(iii) and N.J.A.C. 6A:14–2.10(c)). Ultimately, the discretionary nature of the IDEA's equitable limitations is reflected in the plain language of the statute, which provides that the cost of reimbursement "'may be reduced or denied' for lack of adequate notice [or for unreasonable conduct], rather than must be denied." *Id*.

Here, Plaintiffs argue that the equitable limitations were treated as *per se* bars to reimbursement, and that there was no determination as to whether Defendant provided R.L. with a FAPE or if R.L.'s enrollment at the Craig School was appropriate. ALJ Opinion at 8; *see also K. E.*, 840 F. App'x at 710–12 (remanding matter to district court to "apply the equitable limitations" as a discretionary matter) (citing *T.A.*, 557 U.S. at 247). The Court finds that no such determination was made by the ALJ and that it thus lacks an adequate record to meaningfully

review whether or not Defendant provided R.L. with a FAPE, warranting remand on this issue. Moreover, Plaintiffs note that there was no mention of the possibility of a reduction in reimbursement, as opposed to an outright denial. *Id.* While the Court takes no position on whether reimbursement of any sort should ultimately be granted, such analysis must also be conducted on remand below.

Consequently, the Court is persuaded that reconsideration of this matter is appropriate in light of the IDEA's governing principles. *K. E.*, 840 F. App'x at 710–12 (citing *T.A.*, 557 U.S. at 247) ("Our concern here is reinforced by the fact that the [ALJ], while conducting a detailed analysis in many other respects, did not acknowledge or address the possibility of a reduction in reimbursement, in lieu of outright denial."). Therefore, the Court will remand this matter for further consideration and development of the record as necessary. On remand, the ALJ should consider, amongst other appropriate analysis, whether the Parents' insufficient notice was excused under any notice exception and whether the Parents otherwise acted reasonably in the course of the IEP discussions. Further, the equitable limitations should be considered as discretionary bases for reducing or denying reimbursement, and, relatedly, the ALJ's analysis requires resolution of whether the Board's proposed 2017 IEP would provide R.L. with a FAPE and whether the Craig School was an appropriate placement.

## V. CONCLUSION

Plaintiffs' motion for summary judgment is denied, and this matter is remanded to the ALJ for further consideration in accordance with this Opinion. An appropriate Order accompanies this Opinion.

**DATED:** May 27, 2021

CLAIRE C. CECCHI, U.S.D.J.